UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA        :
                                :
                                :       **SEALED INDICTMENT**
     - v. -                     :
                                :
                                :       21 Cr.
FAROUK APPIEDU,                 :
FRED ASANTE,                    :
CELVIN FREEMAN, and             :
LORD ANING,                     :    21 CRIM 088
                                :
          Defendants.           :
                                :
- - - - - - - - - - - - - - - - X

## COUNT ONE

### (Conspiracy to Commit Wire Fraud)

The Grand Jury charges:

### BACKGROUND

1.    At all times relevant to this Indictment, FAROUK
APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the
defendants, and others known and unknown, were members of a
criminal enterprise (the "Enterprise") based in West Africa that
committed a series of frauds against individuals and businesses
located across the United States, including in the Southern
District of New York.  The frauds perpetrated by the Enterprise
have consisted of, among other frauds, business email
compromises, romance scams, and fraud schemes related to the
novel coronavirus/COVID-19 pandemic.

## MEANS AND METHODS OF THE CONSPIRACY

2.   The objective of the Enterprise's business email compromise fraud scheme was to trick and deceive businesses into wiring funds into accounts controlled by the Enterprise. Members of the Enterprise created email accounts with slight variations of email accounts used by employees of a victim company or third parties engaged in business with a company to "spoof" or impersonate those employees or third parties.   These fake email accounts were specifically designed to trick other employees of the company with access to the company's finances into thinking the fake email accounts were authentic.   The fake email accounts were then used to send instructions to wire money to certain bank accounts and also included fake authorization letters for the wire transfers that contained forged signatures of company employees.   By utilizing this method of deception, the Enterprise sought to trick the victims into transferring hundreds of thousands of dollars to bank accounts the victims believed were under the control of legitimate recipients of the funds as part of normal business operations, when in fact the bank accounts were under the control of members of the Enterprise, including the defendants.

3.   The Enterprise conducted the romance scams by using electronic messages sent via email, text messaging, or online dating websites that deceived the victims, many of whom were

2

vulnerable, older men and women who lived alone, into believing the victim was in a romantic relationship with a fake identity assumed by members of the Enterprise.  Once members of the Enterprise had gained the trust of the victims using the fake identity, they used false pretenses to cause the victims to wire money to bank accounts the victims believed were controlled by their romantic interests, when in fact the bank accounts were controlled by members of the Enterprise, including the defendants.  At times, the members of the Enterprise also used false pretenses to cause the victims to receive funds in the victims' bank accounts, which, unbeknownst to the victims, were fraud proceeds, and to transfer those funds to accounts under the control of members of the Enterprise.  The members of the Enterprise, posing as the romantic interest of the victims, also introduced the victims to other individuals purporting to be, for example, consultants or lawyers, who then used false pretenses to cause the victims to wire money to bank accounts controlled by members of the Enterprise.

4.   The Enterprise conducted the COVID-19 relief-related fraud schemes by submitting fraudulent loan applications through a loan program of the United States Small Business Administration (the "SBA") designed to provide relief to small businesses during the novel coronavirus/COVID-19 pandemic, namely the Economic Injury Disaster Loan ("EIDL") Program.  The

Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020 designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. The CARES Act expanded the EIDL Program, which provided U.S. small businesses with low-interest loans to provide vital economic support to help overcome the temporary loss of revenue they are experiencing due to COVID-19. The Enterprise submitted fraudulent EIDL applications in the names of actual companies to the SBA and when an EIDL loan was approved, the funds were ultimately deposited in bank accounts controlled by members of the Enterprise, including the defendants.

5.    FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, received fraud proceeds from victims of the Enterprise in dozens of business bank accounts that they controlled in New York, New Jersey, Virginia, and elsewhere. The business bank accounts were opened in the names of companies formed by the defendants that were purportedly involved in, among other things, automobile sales, food imports and exports, and freight trucking and shipping. These companies include, but are not limited to, FK Auto Enterprise Inc., FK Frozen Foods Inc., Homie Foods Inc., Homie Motors Inc., and Vision Capital International Inc. owned and controlled by APPIEDU; Fog

4

Logistics LLC and Gold Express LLC owned and controlled by
ASANTE; Freeman Autos LLC owned and controlled by FREEMAN; and
Ohene Enterprise LLC and Lord Enterprice Ltd. owned and
controlled by ANING.

6.    Once FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and
LORD ANING, the defendants, received fraud proceeds in bank
accounts under their control, they withdrew, transported, and
laundered those fraud proceeds to other members of the
Enterprise abroad.  The defendants primarily laundered the fraud
proceeds through their businesses by using the proceeds to
purchase automobiles, food products, and other goods from U.S.-
based suppliers and distributors of such products and shipping
those products to Ghana and elsewhere.  The defendants'
transactions had the appearance of legitimate business
transactions when, in fact, the products had been purchased
using the proceeds of fraud schemes.  This trade-based money
laundering scheme was designed to obscure the origin of the
fraud proceeds as well as the identity of the ultimate
beneficiaries of these schemes.

7.    Collectively, from in or about 2013 through at least
in or about 2020, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN,
and LORD ANING, the defendants, controlled more than 45 bank
accounts that had deposits that totaled over approximately $55
million during that time period.  A vast majority of the

deposits consisted of large wire transfers and check or cash deposits from various U.S.-based individuals and entities that were victims of fraud schemes of the Enterprise, or payments for vehicles, food products, and other goods sold by the defendants that were purchased using fraud proceeds.

## STATUTORY ALLEGATIONS

8.   From in or about 2013 through at least in or 2020, in the Southern District of New York and elsewhere, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

9.   It was a part and an object of the conspiracy that FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit,

APPIEDU, ASANTE, FREEMAN, and ANING engaged in a scheme to receive interstate wire transfers and cash deposits from victims of fraud schemes via bank accounts controlled by the defendants and other members of the conspiracy in the Bronx, New York and elsewhere.

(Title 18, United States Code, Section 1349.)

## COUNT TWO

### (Wire Fraud)

The Grand Jury further charges:

10.  The allegations contained in paragraphs 1 through 7 of this Indictment are repeated and realleged as if fully set forth herein.

11.  From in or about 2013 through at least in or about 2020, in the Southern District of New York and elsewhere, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, APPIEDU, ASANTE, FREEMAN, and ANING received interstate wire transfers and cash

deposits from victims of fraud schemes via bank accounts controlled by the defendants in the Bronx, New York and elsewhere.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT THREE

#### (Money Laundering Conspiracy)

The Grand Jury further charges:

12.   The allegations contained in paragraphs 1 through 7 of this Indictment are repeated and realleged as if fully set forth herein.

13.   From in or about 2013 through at least in or about 2020, in the Southern District of New York and elsewhere, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

14.   It was a part and object of the conspiracy that FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented proceeds of some form of unlawful activity, would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful

activity, to wit, the wire fraud scheme charged in Counts One and Two of this Indictment, in violation of Title 18, United States Code, Sections 1343 and 1349, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Section 1956(h).)

## COUNT FOUR

### (Conspiracy to Receive Stolen Money)

The Grand Jury further charges:

15.  The allegations contained in paragraphs 1 through 7 of this Indictment are repeated and realleged as if fully set forth herein.

16.  From in or about 2013 through at least in or about 2020, in the Southern District of New York and elsewhere, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, a violation of Title 18, United States Code, Section 2315.

17.  It was a part and object of the conspiracy that FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the

defendants, and others known and unknown, would and did receive, possess, conceal, store, barter, sell, and dispose of goods, wares, merchandise, securities, and money, of the value of $5,000 and more, which had crossed a state and United States boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted, and taken, in violation of Title 18, United States Code, Section 2315.

<u>OVERT ACTS</u>

18.    In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about August 14 and 23, 2017, FRED ASANTE, the defendant, received approximately $100,000 in fraud proceeds in a business bank account ASANTE controlled in Virginia.

b.    On or about July 5, 2018, CELVIN FREEMAN, the defendant, received approximately $100,000 in fraud proceeds in a business bank account FREEMAN controlled in New Jersey.

c.    On or about April 8, 2020, LORD ANING, the defendant, received approximately $150,000 in fraud proceeds in a business bank account ANING controlled in Virginia.

d.    On or about July 6, 2020, FAROUK APPIEDU, the defendant, received approximately $75,000 in fraud proceeds in a business bank account APPIEDU controlled in the Bronx, New York.

(Title 18, United States Code, Section 371.)

### COUNT FIVE

### (Receipt of Stolen Money)

The Grand Jury further charges:

19.    The allegations contained in paragraphs 1 through 7 of this Indictment are repeated and realleged as if fully set forth herein.

20.    From in or about 2013 through at least in or about 2020, in the Southern District of New York and elsewhere, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, received, possessed, concealed, stored, bartered, sold, and disposed of goods, wares, merchandise, securities, and money, of the value of $5,000 and more, which had crossed a state and United States boundary after being stolen, unlawfully converted, and taken, knowing the same to have been stolen, unlawfully converted, and taken, to wit, APPIEDU, ASANTE, FREEMAN, and ANING received proceeds of fraud schemes which were transferred from bank accounts and money transfer locations outside of New York to bank accounts in the Bronx, New York and elsewhere.

(Title 18, United States Code, Sections 2315 and 2.)

11

## FORFEITURE ALLEGATIONS

21.  As the result of committing the wire fraud and stolen property offenses charged in Counts One, Two, Four, and Five of this Indictment, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

a.  Any and all funds in account number 483086642546 in the name of Homie Foods Inc. at Bank of America, N.A. and any and all funds traceable thereto;

b.  Any and all funds in account number 483086806861 in the name of Vision Capital International Inc. at Bank of America, N.A. and any and all funds traceable thereto;

c.  One 2020 Bentley Continental GT bearing VIN SCBCB2ZG4LC082291;

d.  One 2019 Rolls Royce Cullinan bearing VIN SLA689X51KU113628;

12

e.  One 2019 Rolls Royce Cullinan bearing VIN SLA689X58KU114081; and

f.  One 2020 Mercedes-Benz G63 AMG, bearing VIN W1NYC7HJ1LX343825 (collectively, the "Specific Property").

22.  As a result of committing the money laundering offense alleged in Count Three of this Indictment, FAROUK APPIEDU, FRED ASANTE, CELVIN FREEMAN, and LORD ANING, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, and any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense and the Specific Property described in paragraph 21 above.

## Substitute Assets Provision

23.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

      (Title 18, United States Code, Sections 981 and 982;
        Title 21, United States Code, Section 853; and
         Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____ /SKR
AUDREY STRAUSS
United States Attorney

14

Form No. USA-33s-274 (Ed. 9-25-58)

---

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

---

### UNITED STATES OF AMERICA

v.

**FAROUK APPIEDU,**
**FRED ASANTE,**
**CELVIN FREEMAN, and**
**LORD ANING,**

                     Defendants.

---

### SEALED INDICTMENT

21 Cr.

(18 U.S.C. §§ 371, 1343, 1349, 1956(h), 2315, and 2)

---

AUDREY STRAUSS
United States Attorney

_____
Foreperson